UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE LEE SKELLETT,

               Petitioner,                       Case Number: 20-cv-12724
                                                     Honorable Linda V. Parker

v.

RANDEE REWERTS,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Eddie Lee Skellett has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for assault with intent to commit murder, Mich. Comp. Laws § 750.83.  He raises six claims for relief.   The Court finds no basis for habeas corpus relief and denies the petition. The Court also denies a certificate of appealability and Petitioner's motion for discovery.  The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.    Background

Petitioner was charged with the following in the Circuit Court for Monroe County, Michigan: assault with intent to commit murder, first-degree criminal sexual conduct, second-degree criminal sexual conduct, and third-degree fleeing or

eluding a police officer.  The jury convicted Petitioner of assault with intent to

commit murder and third-degree fleeing or eluding a police officer and acquitted

him of the criminal sexual conduct charges.  On June 28, 2018, the state court

sentenced Petitioner to 20 to 40 years for the assault conviction, and 365 days for

fleeing or eluding.

Petitioner filed an appeal by right in the Michigan Court of Appeals.  In its

decision affirming Petitioner's convictions and sentence, the Michigan Court of

Appeals set forth the following relevant facts:

> Defendant was convicted of physically assaulting DF during the early morning hours of August 14, 2017.  DF is the cousin of SM, who previously lived with defendant but had broken up with him before the offense.  On the morning of August 14, DF accompanied SM to defendant's home so that SM could retrieve her belongings. SM had communicated with defendant earlier that evening, so defendant was aware that SM was coming to his home.  According to both DF and SM, the door to defendant's home was open when they arrived and defendant was in the living room, with only a dim light on.  DF sat down in the living room while defendant and SM talked. Defendant questioned why DF was there and asked SM how they were supposed to do anything with her present.  Defendant then told SM that he would "take care of her" (referring to DF).  Defendant went into his bedroom and retrieved a sword.  According to SM, defendant slashed at DF several times with the sword.  DF sustained a severe cut to her face and fell to the floor.

> SM and defendant fought over the sword while defendant also tried to force SM into his bedroom.  According to SM, she eventually gave up and went into the bedroom with defendant, where he then performed sexual acts on her.  When defendant left the bedroom to check on DF, SM jumped out a window, ran to a nearby house for help, and the police were contacted.  DF was also able to escape and she went to another neighbor's home and also called for assistance.

2

Defendant left his house in his vehicle.  A police officer spotted defendant near his house and attempted to initiate a traffic stop of defendant's vehicle, but defendant evaded the officer and drove away, resulting in a police chase.  Defendant eventually lost control of his vehicle, crashed into a tree, and was taken into custody.

The defense theory at trial was self-defense.  Defendant claimed that he armed himself with the sword because he believed someone had entered his home.  Because his house was dark, he could not see who was inside and he feared for his safety.  He described using the sword in a slashing motion only one time, which resulted in the cut to DF's face.  Defendant could not explain why DF had other injuries to her head and neck.

*People v. Skellett*, No. 344600, 2020 WL 1046697, *1 (Mich. Ct. App. March 3, 2020).  These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence, but remanded to the trial court for the limited purpose of correcting the presentence information report which did not reflect changes approved by the trial court at sentencing.  *Skellett*, 2020 WL 1046697 at *1.  Petitioner sought and was denied leave to appeal in the Michigan Supreme Court.  *People v. Skellett*, 943 N.W.2d 146 (Mich. May 29, 2020).

Petitioner then filed this habeas corpus petition.  He seeks relief on these claims:

I.  Ineffective assistance of counsel for not following Skellett's choice of strategy, not presenting evidence Skellett requested, not properly investigating or preparing for trial, failing to

3

properly test the State's theory, and failing to make logical
choices based on sound strategy.

II.     Prosecutorial misconduct by misrepresenting facts not in
        evidence, eliciting unverified DNA evidence, and failing to
        comply with discovery.

III.    The trial court improperly denied Skellett the use of an expert
        witness, improperly allowed initial trial counsel to withdraw,
        and was biased against Skellett.

IV.     Skellett's compulsory rights were violated.

V.      Skellett's confrontational rights were violated.

VI.     Structural error occurred requiring a new trial.

(ECF No. 1.)  Respondent filed an answer in opposition arguing that certain claims

are procedurally defaulted and unexhausted, and that all Skellett's claims are

meritless.  (ECF No. 7.)  Petitioner filed two reply briefs.  (ECF Nos. 10, 11.)

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted
with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

4

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only with clear and convincing evidence.  *Id.*  Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.    Discussion

### A.    Petitioner's Motion for Discovery

Petitioner has filed a motion for discovery seeking production of certain crime scene photos.  (ECF No. 16.)  Petitioner attached to his petition photocopies of select photos but recently learned that the poor quality of the photos rendered them unusable.

"Habeas petitioners have no right to automatic discovery."  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (internal quotation marks omitted). Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts permits a court to authorize discovery only upon a showing of good cause. "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Id.* (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).

6

Petitioner correctly observes that many of the photos attached to his petition are of little value because they are poor quality copies. But the Court finds discovery unnecessary because the same photos were filed on appeal in state court and are part of the record before this Court. The record as a whole contains photos of sufficient clarity to allow a fair adjudication of Petitioner's claims. The motion, therefore, will be denied.

### B.    Ineffective Assistance of Counsel

In his first claim, Petitioner argues that his trial counsel rendered ineffective assistance in multiple ways.

Respondent argues that portions of Petitioner's ineffective assistance of counsel claims have not been exhausted in state court. Indeed, many of the factual allegations Petitioner advances in his petition were not included in his state court briefs. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987). An unexhausted claim may be decided if it is clearly meritless such that addressing it would be efficient and not offend federal-state comity. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987) (habeas petition may be denied on merits despite failure to

exhaust state court remedies).  The Court need not decide the exhaustion issue

because Petitioner's claims are clearly meritless.[1]

On habeas corpus review, to prevail on an ineffective assistance of counsel

claim, Petitioner must show that the state court's denial of his claim was contrary

to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668

(1984).  *Strickland* established a two-prong test for claims of ineffective assistance

of counsel: a habeas petitioner must show (1) that counsel's performance was

deficient, and (2) that the deficient performance prejudiced the defense.  *See id.* at

687.

The standard for obtaining habeas corpus relief is "difficult to meet."  *White*

*v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351,

358 (2013)).  In the context of an ineffective assistance of counsel claim under

*Strickland*, the standard is "all the more difficult" because "[t]he standards created

by *Strickland* and § 2254(d) are both highly deferential and when the two apply in

tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and

quotation marks omitted).  "[T]he question is not whether counsel's actions were

reasonable"; but whether "there is any reasonable argument that counsel satisfied

*Strickland*'s deferential standard."  *Id.*

---

[1] Respondent maintains that some of Petitioner's remaining claims are also
unexhausted.  In the interest of judicial economy, the Court reaches the merits of
these claims are well.

Petitioner maintains that counsel failed to use available mitigating and exculpatory evidence in support of the defense, failed to conduct a reasonable investigation, and failed to follow his client's wishes.  Petitioner also argues that counsel's choices were not based on reasonable trial strategy and that counsel failed to subject the prosecution's case to meaningful adversarial testing. Petitioner's subclaims overlap, challenging many of the same actions (or inactions) by counsel.  Because there is overlap in the facts and analyses underlying these subclaims, the Court declines to follow the structure utilized by Petitioner.  Instead, the Court groups the claims according to their factual bases.

**1.**

First, Petitioner claims that counsel undermined the defense of self-defense by arguing in opening and closing that Petitioner was expecting company.  In his opening statement, counsel did not say that Petitioner was expecting company, instead he emphasized that Petitioner believed the two figures in his home were intruders and that he feared for his life.  (*See e.g.,* ECF No. 8-7 at PageID. 1812.) In his closing statement, counsel stated that Petitioner was expecting SM to come to the home.  (ECF No. 8-8 at PageID. 2177.)  This argument was consistent with Petitioner's own testimony that he told SM to come over soon and would leave his door unlocked in case he fell asleep.  (*Id.* at PageID. 2062.)  Counsel did not

perform ineffectively or fail to follow Petitioner's wishes by asserting arguments consistent with his trial testimony and his defense.

Relatedly, Petitioner maintains that counsel's handling of text messages represented a missed opportunity to show that Petitioner was justifiably surprised and scared when he saw two figures in his living room. Petitioner argues that his text message exchanges with SM would have shown that he did not expect SM to "come into the house proper," bolstering his claim that he was not expecting company. (ECF No. 1 at PageID. 32.) The text exchange does not support this argument. No text indicates that SM was not to enter the house proper. Instead, the following text from SM supports a conclusion that Petitioner was expecting company: "I'll b there. And talk for a min." (ECF No. 1-1 at PageID. 95.) The Court sees no basis for Petitioner's claim that this text exchange would have bolstered the defense.

### 2.

Petitioner next argues that counsel was ineffective for failing to use crime scene photos or medical and police reports to show that this was not an "uncontrolled bleeding near death situation." (ECF No. 1 at PageID. 32.) And he claims that the unused crime scene photos would have substantiated his testimony of "one step and swing" in self-defense rather than a full-out assault. (*Id.* at PageID. 33.)

10

The Michigan Court of Appeals held that counsel was not ineffective in this regard.  The state court found no error in counsel's decisions about which evidence to present and held that Petitioner failed to show prejudice.  *Skellett*, 2020 WL 1046697, at *10.  Further, "[c]ounsel presented a self-defense theory at trial, consistent with defendant's wishes."  *Id.*

The Michigan Court of Appeals' decision was not contrary to or an unreasonable application of *Strickland*.  Seventy photographs of the crime scene were admitted at trial.  *Id.*  It is unclear whether the specific crime scene photographs attached to the petition were among those admitted into evidence.  To the extent they were admitted into evidence, Petitioner provides no reason why the jury would have been unable to assess the amount of blood in these pictures.  If they were not admitted into evidence, Petitioner fails to show how those photographs were superior to the admitted photographs.

In addition, Petitioner's self-defense theory did not depend on the amount of blood in the photographs because ample other evidence detailed the severity of DF's injuries.  For example, the neighbor on whose garage door DF banged testified that he saw "blood pourin' down her arm" and "her cheek was just hanging open."  (ECF No. 8-7 at PageID. 1839, 1846.)  Petitioner fails to show that defense counsel's handling of the crime scene photos worked to the defense's detriment.

11

Further, while defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary, a conclusory allegation that counsel should have done more is insufficient to state a clam. *Strickland*, 466 U.S. at 690-91.  Petitioner fails to show that counsel's pretrial investigation or lack of investigation influenced counsel's strategy regarding the crime scene photos.

Petitioner also claims that counsel should have used the hospital and EMS reports to rebut photographs "A1-A3" showing bruising on DF's face and neck. Copies of these photos are attached to the petition.  (ECF No. 1 at PageID. 83-85.) A1 is a very poor-quality copy with only the blurred image of a woman with shoulder length hair visible.  Photos A2 and A3 are essentially indistinct black squares.  Nevertheless, based on the date stamps at the top of the photo pages, it is clear that A1-A3 are the same photographs reviewed by the Michigan Court of Appeals.  (*See* ECF No. 8-12 at PageID. 2489-2491.)  The photos that are part of the court of appeals record are of much better quality than those attached to the petition.  The Court referenced these photographs when considering this claim.

The Michigan Court of Appeals denied Petitioner's claim that counsel was ineffective in handling these photographs:

> Defense counsel did not object to the foundation or authenticity for those photographs, but no basis for an objection is apparent from the record.  Defendant seems to argue that some of the photographs of DF's injuries were improper because they were taken four days after

the offense and may have depicted DF's injuries or postsurgical condition that was not observed by the police and other witnesses at the time of the offense.  However, nothing in the record suggests that the injuries depicted in the photos were not received by DF during the offense and defendant has not otherwise identified a proper basis on which counsel could have objected to the admission of the photographs.

*Skellett*, 2020 WL 1046697, at *10.

Petitioner appears to assert that use of the medical or police reports would have rebutted the prosecution's theory that he "pummel[ed]" the victim.  (ECF No. 1 at PageID. 34.)  DF testified that, while she did not know exactly what caused the bruises, she had no bruises on her face or neck before she went to Petitioner's house.  Petitioner does not dispute this testimony, but asserts that because the EMS and police reports did not mention bruises he could not have caused them.  Even if use of the reports could have established that another source caused the bruises, such as DF's escape through the bedroom window or the surgery, Petitioner fails to show that counsel performed ineffectively by not pursuing this point.  It would have been reasonable for counsel to conclude the potential (likely minor) benefit of establishing Petitioner did not cause the bruises did not outweigh the risk of alienating the jury by focusing on a minor injury.

Petitioner further argues that instead of using crime scene photos and medical and police records, defense counsel told the jury that Petitioner "stood over DF watching her bleed to death."  (*Id.* at PageID. 32.)  The cited transcript

13

page contains the court's jury instructions and does not include anything even closely approximating the quote Petitioner attributes to defense counsel. The Court's own search of the transcript fails to locate this statement by defense counsel. This claim is wholly unsupported.

### 3.

Petitioner claims that counsel failed to obtain medical records from the jail that depicted bruising he sustained when SM struck him with a bed slat. Petitioner does not reference any jail medical records nor establish that such records exist. Therefore, he fails to show that counsel was ineffective in this regard.

### 4.

Petitioner next faults defense counsel for failing to subpoena multiple family members who would have testified that neither SM nor DF had any property at his home to rebut SM's testimony that she was going to retrieve personal belongings from the home. Petitioner presents no offer of proof that any family member would have provided such testimony. His conclusory claim is insufficient to show counsel was ineffective.

**5.**

Petitioner faults counsel for failing to submit evidence that there were break-ins within the same block on which he lived to show that he had an "honest and reasonable fear for a claim of self defense." (ECF No.1 at PageID. 34.) Petitioner submits what appears to be a newspaper clipping bearing the title "Monroe County Crime Log." (ECF No. 1-1 at PageID. 97.) This clipping is undated and its source unidentified and indiscernible. In the absence of evidence that the source is reliable, covers a relevant time period, or is geographically near Petitioner's home, Petitioner cannot show that counsel was ineffective in this regard.

**6.**

Next, the Michigan Court of Appeals denied Petitioner's claim that counsel was ineffective in failing to impeach SM and DF with their statements to police or their preliminary examination testimony. *Skellett*, 2020 WL 1046697 at *11. The state court held that these were matters of trial strategy and Petitioner failed to "overcome the presumption that counsel performed effectively and that his decisions involved reasonable strategy." *Id.* The state court's decision was reasonable.

Decisions whether and to what extent to cross-examine witnesses are matters of strategy and "'virtually unchallengeable'" if made after considering the relevant law and facts. *Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002). The record

shows that counsel effectively cross-examined SM and DF.  Counsel may not have questioned both witnesses in the precise way Petitioner would have preferred, but this does not render counsel's representation ineffective nor does it mean counsel failed to follow Petitioner's wishes.  Counsel focused on eliciting testimony which would bolster the self-defense theory.  Indeed, under defense counsel's cross-examination, DF conceded that she remembered only being struck once and that her preliminary examination testimony that she had been struck repeatedly was not accurate.  Additionally, counsel's cross-examination of SM placed sufficient doubt in the jury's mind to acquit Petitioner of two counts of criminal sexual conduct.

**7.**

Petitioner asserts that counsel should have shown that DF had a motive to lie at trial because she had many unpaid medical bills.  Beyond submitting copies of DF's medical bills, Petitioner provides no support that would render this anything more than mere speculation.  This claim is meritless.

**8.**

Next, Petitioner faults defense counsel for failing to request an instruction on assault with intent to do great bodily harm less than murder as a lesser included offense to the charge of assault with intent to murder.  The Michigan Court of Appeals denied this claim holding that it "was [an] objectively reasonable" strategic decision for trial counsel to "forgo an instruction on assault with intent to

16

do great bodily harm where it was the defense theory that defendant was not guilty of any offense because he acted in lawful self-defense." *Skellett*, 2020 WL 1046697 at \*5.

Petitioner has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. An attorney's decision not to request an instruction on a lesser included offense may be proper trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005) (noting it is a "permissible use of trial strategy" to not request certain instructions). The decision to pursue an all-or-nothing strategy in the hope that the jury would acquit Petitioner of assault with intent to murder was reasonable. Petitioner therefore has failed to show that the state court's denial of this claim was contrary to, or an unreasonable application of, *Strickland*.

### 9.

Finally, Petitioner claims that his attorney's performance was so dismal as to amount to the constructive denial of counsel. Under certain egregious circumstances, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," a constructive denial of counsel occurs. *United States v. Cronic*, 466 U.S. 648, 659 (1984). When there is a constructive denial of counsel, a defendant need not show prejudice to establish ineffective assistance of counsel. *Id.* at 658-59. However, *Cronic*'s presumption of prejudice is applied

17

only where "the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear." *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (quoting *Moss*, 286 F.3d at 860). For a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, the attorney's failure "must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).

Here, counsel's supposed errors did not rise to a constructive denial: counsel actively represented Petitioner at trial, effectively cross-examined prosecution witnesses, made timely objections, and presented a cohesive defense. Nothing in the record makes imminently clear a collapse of the adversarial system.

### C.   Prosecutorial Misconduct

In his second claim, Petitioner argues that the prosecutor's misconduct violated his due process rights. Specifically, he maintains that the prosecutor misrepresented facts and referenced facts not in evidence in his opening statement and closing argument, elicited false testimony, withheld discovery in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), misrepresented evidence to convince the court to deny the defense request for an expert, and forced Petitioner to testify in his own defense.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

18

(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial

misconduct entails much more than conduct that is "undesirable or even

universally condemned."  *Id.* at 181 (internal quotation omitted).  To constitute a

due process violation, the conduct must have been "so egregious as to render the

entire trial fundamentally unfair to a degree tantamount to a due process violation."

*Washington v. Hofbauer*, 228 F.3d 689, 708 (6th Cir. 2000).

The *Darden* standard "is a very general one, leaving courts 'more

leeway . . .  in reaching outcomes in case-by-case determinations.'"  *Parker v.

Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)) (alteration in original).  "That leeway increases in assessing a state

court's ruling under AEDPA," because the court "cannot set aside a state court's

conclusion on a federal prosecutorial-misconduct claim unless a petitioner

cites . . . other Supreme Court precedent that shows the state court's determination

in a particular factual context was unreasonable."  *Stewart v. Trierweiler*, 867 F.3d

633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir.

2015)).

## 1.

Petitioner first maintains that the prosecutor's opening and closing

statements misrepresented facts and referenced facts not in evidence.  The

Michigan Court of Appeals held that the prosecutor's arguments were not

improper:

> Evidence was presented that SM had broken up with defendant and that, the day before the charged offenses, SM had refused to go home with defendant and instead chose to stay with her ex-husband. Thereafter, on the day of the offenses, SM took DF with her to defendant's home because she only intended to retrieve her belongings and wanted someone with her.  It was reasonable for the prosecutor to infer from this evidence that defendant was upset when SM arrived at his home with DF because he realized then that SM did not intend to stay there.  Defendant testified that he had obtained drugs for SM, presumably to entice her to his house.  SM also testified that when she and DF arrived together, defendant asked how they were supposed to do anything with DF present, that defendant thereafter made a comment about "first taking care of her" (referring to DF), and then defendant "started going crazy with the sword on her."  According to SM, defendant thereafter engaged in forcible sexual conduct with her.  This evidence supports the prosecutor's theory that defendant had planned to engage in sex with SM, but DF's presence interrupted those plans, causing defendant to assault DF in a fit of rage.  Accordingly, the prosecutor's arguments were not improper.

*Skellett*, 2020 WL 1046697, at *6.

The prosecutor did not misstate the trial testimony.  He simply focused on

the testimony that supported the prosecution's theory of the case, which is not

improper.  Petitioner contests the accuracy of certain testimony, but the credibility

of the witnesses is a question for the jury and Petitioner fails to show that the

prosecutor's argument rested on any facts not in evidence or unreasonable

inferences.

**2.**

Next, Petitioner claims that the prosecutor improperly elicited testimony that DNA existed on the sword.  In response to a jury question submitted when the defense rested, police detective Michael McClain was recalled to the stand and testified that neither the sword nor the bed slat had been tested for fingerprints. (ECF No. 8-8 at PageID. 2129.)  He also testified that the sword had not been cleaned so there should still be blood on the sword.  (*Id.* at PageID. 2129-30.) Upon reviewing the transcript of Detective McClain's testimony, contrary to Petitioner's assertion, Detective McClain did not assert that DNA was found on the sword.  In addition, Petitioner fails to explain how DNA testing would have aided his defense or the absence of testing prejudiced his defense given that he admitted that he struck DF with the sword.  The prosecutor did not intentionally elicit false testimony.

Petitioner also maintains that the prosecutor improperly argued that SM had ended her relationship with Petitioner and was returning to the home to retrieve her property.  The above-quoted excerpt from the Michigan Court of Appeals' decision reflects its holding that the prosecutor's argument was not improper because it was supported by evidence adduced at trial.

Petitioner disagrees with the prosecutor's theory, but this does not render the theory false.  The prosecutor is free to argue "reasonable inferences from the

21

evidence adduced at trial." *West v. Bell*, 550 F.3d 542, 566 (6th Cir. 2008) (quotation and citation omitted).

Petitioner also alleges that the prosecutor convinced DF to change her trial testimony to convince the court to deny Petitioner an expert and to ensure her testimony was consistent with the crime scene photos. (ECF No. 1 at PageID. 50, 58.)  This claim is based on conjecture and Petitioner's belief that DF's testimony was inconsistent with the evidence.  He does not show misconduct.

At bottom, Petitioner's allegations that the prosecutor misstated evidence and elicited false testimony rest on a disagreement with the prosecutor's view and presentation of the evidence.  Petitioner maintains that the prosecutor "put on its blinders" and advanced its theory of Petitioner's guilt "to obtain a conviction." (ECF No. 1 at PageID. 51.)  The prosecutor elicited testimony and presented incriminating evidence, but Petitioner has not shown that the prosecutor manipulated the facts, counseled witnesses to change their testimony, or misled the jury in any way.  This claim is denied.

### 3.

Petitioner claims that the prosecution withheld discovery in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The Due Process Clause requires the state to disclose to the defense favorable evidence that is material to guilt or punishment.  *Id.* at 87. "[E]vidence is 'material' within the meaning of *Brady* when

there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470 (2009). A reasonable probability in this context means "that the likelihood of a different result is great enough to undermine[ ] confidence in the outcome of the trial." *Smith v. Cain*, 565 U.S. 73, 75-76 (2012) (punctuation modified). To demonstrate a *Brady* violation, (i) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (ii) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (iii) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

Petitioner claims that the prosecution failed to provide him with a photo of the sword's hilt. Even assuming a photo was in the exclusive control of the prosecution, Petitioner fails to show the evidence was favorable. The Michigan Court of Appeals observed that the jury asked to see the sword's handle during deliberations and that photographs of DF's face showed a mark consistent with the sword's handle. *Skellett*, 2020 WL 1046697 at *10. Given this finding, Petitioner has not shown that a photograph of the sword's handle would have been exculpatory.

Next, Petitioner claims that the State failed to make DNA from the hilt available to him for testing. Presumably, Petitioner means a sample of the blood

23

from the sword.  Petitioner admitted to striking DF with the sword and presents no argument that the blood on the sword came from anyone other than DF.  Even if DNA testing showed a source other than DF, SM, or Petitioner, the Court sees no basis for a finding that this evidence would be favorable to the defense.

Finally, Petitioner claims that the prosecution failed to produce a hospital report listing DF's injuries.  He maintains such a report would provide information regarding the presence (or absence) of bruising and perhaps the source of any bruising.  Petitioner fails to provide any basis for concluding that other hospital records exist, other than those produced and filed with his petition.  The Court finds no *Brady* violation.

## 4.

Finally, Petitioner claims that the prosecutor forced him to testify in his own defense because, during the hearing concerning Petitioner's motion for an expert, the prosecutor stated, "[i]f the defendant wants to claim self-defense, the defendant has to get on the stand and claim that he was acting in self-defense."  (ECF No. 8-4 at PageID. 1648.)  The Michigan Court of Appeals found "nothing in the record to support defendant's statement that he was forced to testify in violation of his right against self-incrimination."  *Skellett*, 2020 WL 1046697 at *11.

Under Michigan law, a defendant need not testify to present a defense of self-defense.  *People v. Hoskins*, 267 N.W.2d 417, 419 (Mich. 1978).  But there

must be some evidence to support such a theory to merit a self-defense instruction. *Id.* Considered in context, the prosecution's statement could be interpreted as an argument that regardless of expert witness testimony, Petitioner's self-defense theory would only be believed if he testified. In addition, even if the prosecution's statement was simply a misstatement of the law, Petitioner fails to show that the isolated statement during a pretrial hearing compelled his testimony. He does not allege that defense counsel failed to apprise him of his right not to testify. Indeed, during voir dire, defense counsel told the jury that Petitioner had a constitutional right not to testify and the trial court's initial jury instructions stated that Petitioner did not have to produce any evidence. (ECF No. 8-7 at PageID. 1726, 1786.)

The Michigan Court of Appeals' decision denying this claim was not contrary to or an unreasonable application of Supreme Court precedent.

### D.   Trial Court's Rulings and Petitioner's Right to a Fair Trial

In his third claim, Petitioner argues that several of the trial court's decisions denied him a fair trial and evidenced a bias against the defense.

### 1.

The trial court denied Petitioner's request for appointment of a medical expert to support his theory that DF's injuries were consistent with a single slash, rather than multiple slashes. Petitioner asserts that this decision violated his rights to due process and to present a defense.

The trial court held that expert testimony was unnecessary because determining whether DF was struck more than once was within a "reasonable commonsense jury's" abilities. *Skellett*, 2020 WL 1046697 at *2. The Michigan Court of Appeals held that the denial of an expert did not render Petitioner's trial fundamentally unfair or deny him due process:

> Defendant argued that an expert was needed to determine how many times DF was struck with the sword, which he claimed was probative of his claim of self-defense. Defendant claimed that he cut DF only one time. Defendant argued that if an expert could confirm that DF suffered only a single wound to her cheek, it would support his claim that he acted in self-defense. Defendant acknowledged that DF had other injuries, but he denied causing them. Although defendant argued that a medical expert was necessary to help defense counsel prepare to cross-examine the prosecution's expert witnesses, the prosecution did not present any experts at trial regarding DF's injuries. We believe the trial court correctly approached the issue by analyzing whether the assistance of an expert was necessary to evaluate the nature of DF's injuries. Other evidence was available to assess DF's injuries, including photographs of her injuries and her medical records, as well as her own testimony regarding the nature of the injuries and her appearance at trial. Moreover, although defendant may be correct that the number of wounds received by DF would be probative of defendant's claim that he swung the sword only once, an expert would not have been able to offer testimony regarding defendant's intent in striking DF (i.e., that he was acting in self-defense), even if her injury was consistent with being struck only one time. Further, an expert would not have been able to determine whether defendant may have swung at DF additional times without striking her. Thus, defendant did not show that an expert was necessary to support his claim that he struck DF only one time in self-defense.

Second, defendant has not shown that the court's decision to deny him funds for an expert resulted in a fundamentally unfair trial.  As noted, defendant admitted that DF had other unexplained injuries, in addition to the severe cut to her face.  During the direct examination of DF, she was shown photographs of her face, including other injuries to her head and neck.  She testified that she received those injuries that night, but did not know how she received them.  DF's medical records indicate that she had a large laceration from the corner of the left side of her mouth to the middle of her left cheek, which extended through the cheek and into the mouth. Although SM testified that defendant slashed at DF multiple times with the sword, it is undisputed that DF suffered only the large laceration to her face.  She had other injuries, but did not have any other cuts.  It was up to the jury to decide if the other injuries were caused during the assault or if DF might have suffered them trying to escape.  The medical records and DF's testimony that she could only recall a single laceration to her face enabled defendant to argue, without the aid of an expert, that her injuries were caused by only a single slash.  Because defendant wanted an expert only for the purpose of supporting his theory that he cut DF only once with the sword, and there was other medical evidence and testimony to support that theory, defendant has not established that an expert was needed to prove that point.  Defendant did not intend to use an expert to explain DF's other bruises and injuries, and an expert also would not have been able to offer testimony regarding either defendant's intent when he cut DF with the sword or whether defendant may have swung at DF additional times without striking her.  Accordingly, defendant has not demonstrated that it is reasonably probable that the denial of an expert resulted in a fundamentally unfair trial.

*Skellett*, 2020 WL 1046697, at *4.

The Michigan Court of Appeals' decision was not contrary to, or an

unreasonable application of, clearly established federal law because there is no

clearly established federal law requiring appointment of an expert witness in these

circumstances.  The Supreme Court requires States to provide access to a

competent psychiatrist to assist the defense if the defendant's sanity at the time of

the offense is a factor at trial.  *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985).  But

"[t]he Supreme Court has left open how *Ake* should extend to experts other than

psychiatrists . . ., and the Court's subsequent decisions have not created a 'clear or

consistent path for courts to follow' when answering this due-process question."

*Bergman v. Howard*, 54 F.4th 950 (6th Cir. 2022) (internal citation omitted); *see

also Davis v. Maclaren*, No. 17-2153, 2018 WL 4710071, at *3 (6th Cir. Apr. 3,

2018) (holding that "there is no clearly established right to the appointment of non-

psychiatric expert witnesses or court appointed investigators").  In *Caldwell v.

Mississippi*, 472 U.S. 320, 323 n.1 (1985), the Court expressly declined to reach

the issue whether the analysis set forth in *Ake* applies to the appointment of experts

outside the psychiatric realm.

Because no clearly established Supreme Court precedent establishes

Petitioner's right to the appointment of an expert, the Michigan Court of Appeals'

rejection of Petitioner's claim is neither contrary to nor an unreasonable

application of federal law as determined by the Supreme Court.  Moreover,

Petitioner fails to offer anything other than a conclusory allegation to show that an

expert witness could have helped the defense.  Accordingly, Petitioner is not

entitled to relief on this claim.

28

**2.**

Petitioner claims that the trial court improperly allowed his attorney to withdraw based on a conflict of interest because counsel also represented a potential witness in Petitioner's case.  Counsel withdrew a little over two months before Petitioner's trial began.  (*See* ECF No. 8-5.)

The Michigan Court of Appeals found no error:

> Defendant also accuses the trial court of misconduct related to the removal of his first attorney.  The record discloses that defendant's first attorney moved to withdraw due to a conflict of interest.  The trial court granted the motion to withdraw after consulting with defendant, who conceded that it was necessary to appoint new counsel.  There is no evidence that the removal of defendant's first attorney was somehow orchestrated to prevent defendant from receiving a fair trial.

*Skellett*, 2020 WL 1046697 at *13.

"[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'"  *Wheat v. United States*, 486 U.S. 153, 159 (1988) (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984)).  Defendants who require counsel to be appointed for them do not have a right to counsel of choice.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  "[W]hen a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate."  *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001).  Because

Petitioner required the appointment of counsel, he had no right to the counsel of his choice.

Additionally, as noted by the court of appeals, Petitioner consented to replacement of counsel.  Even if Petitioner wished to waive the conflict, it was in the court's discretion to nevertheless remove counsel.  A trial court has "an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'"  *Gonzalez-Lopez*, 548 U.S. at 152 (quoting *Wheat*, 486 U.S. at 160).  Thus, where counsel is laboring under an actual conflict of interest the court may disqualify counsel, even where counsel is retained or where the defendant waives the conflict of interest.  *Wheat*, 486 U.S. at 162-63; *see also United States v. Matsa,* 540 F. App'x 520, 523 (6th Cir. 2013) (court has "broad discretion to remove counsel for a potential conflict, even if the defendant wishes to waive the conflict").

Petitioner received the effective assistance of counsel—the constitutional concern at the heart of this inquiry.  Habeas relief is denied.

### 3.

Lastly, Petitioner cites "other court errors" which he claims show the trial court's bias.  An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  "[J]udicial rulings alone almost never

30

constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510

U.S. 540, 555 (1994).

The Michigan Court of Appeals denied this claim finding that the trial judge

acted within the wide discretion and power afforded trial courts in ensuring that

trials proceed in an orderly fashion. *Skellett*, 2020 WL 1046697, at *13-15. On

habeas review the inquiry focuses on whether the trial judge's conduct rendered

the trial fundamentally unfair. "To violate a defendant's right to a fair trial, a trial

judge's intervention in the conduct of a criminal trial would have to reach a

significant extent and be adverse to the defendant to a substantial degree." *McBee*

*v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985). Although Petitioner disagrees with

many of the trial court's rulings, he has not shown that the judge relied on

extrajudicial sources in rendering his decisions or that he showed any degree of

favoritism for the prosecution or antagonism for Petitioner. The Michigan Court of

Appeals' decision denying this claim easily withstands scrutiny under the AEDPA

standard and relief is denied on this claim.

### E.    Right to Compulsory Process

Petitioner claims that his right to compulsory process was violated by the

exclusion of certain evidence. The Sixth Amendment's Compulsory Process

Clause "provides a defendant with the right to present witnesses and evidence in

his defense." *United States v. Hamilton*, 128 F.3d 996, 1000 (6th Cir. 1997)

(citation omitted).  "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies."  *Washington v. Texas*, 388 U.S. 14, 19 (1967).

The evidence Petitioner describes was not excluded by the trial court nor was its admission opposed by the prosecution.  For example, photos of the loveseat were admitted into evidence.  And police and medical reports were not excluded because counsel never moved to admit them.  Where Petitioner has not shown that the trial court excluded any relevant evidence or that the State took some action to exclude such evidence, he fails to show a violation of his right to compulsory process.  *See Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008) (requiring some action on the part of the government or trial court to exclude testimony or evidence to implicate a compulsory process violation).

### F.  Confrontation Clause

Petitioner argues that his right of confrontation was violated because the trial court denied his request for an expert and because defense counsel did not effectively cross-examine witnesses.  These violations, Petitioner claims, meant the prosecution's case was not subject to the crucible of meaningful adversarial testing.

The right of confrontation guarantees a criminal defendant the right to confront the witnesses against him or her.  U.S. Const., Am. VI.  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause thus prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Court has found no constitutional violation in the trial court's denial of an expert witness or in counsel's performance.  The Confrontation Clause does not provide a separate or additional means of asserting these meritless claims.  Petitioner had the opportunity to cross-examine the witnesses against him.

### G.   Structural Error

In his final claim, Petitioner asserts that the numerous structural errors alleged throughout the petition require automatic reversal.  No structural errors have been shown.  This claim is denied.

## IV.   Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.

Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  To receive a certificate of

appealability, "a petitioner must show that reasonable jurists could debate whether

(or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to

proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations

omitted).

For the reasons set forth above, the Court finds that jurists of reason could

not debate the conclusion that Petitioner has failed to demonstrate an entitlement to

habeas relief.  A certificate of appealability is denied.

The Court grants Petitioner leave to appeal *in forma pauperis* because an

appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P.

24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is

**DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for discovery (ECF

No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma

pauperis on appeal if he chooses to appeal this decision.  28 U.S.C. § 1915(a)(3).

s/ Linda V. Parker

LINDA  V. PARKER

U.S. DISTRICT JUDGE

Dated: March 29, 2024


I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 29, 2024, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan

Case  Manager
